UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

CHARLES PALMER, et al.,

           Defendants.

**Hon. Hugh B. Scott**

11CR202S

**Order**

    Before the Court are several moving defendants' separate omnibus motions (Docket Nos. 74, Charles Palmer, Sr.; 75, 76, George Krajas; 84, Michael Smerka; 72, Aleathea Stone; and 85, 86, Charles Palmer, Jr.) seeking various forms of relief. Some of the other defendants joined in these motions (Docket Nos. 81 (William Bart Alexander); 80, 96 (Timothy Borkowski); 82 (Christopher Carluccio); 77 (James Simmons)), with some of the moving defendants also joined in codefendants' motions, Docket Nos. 84 (Smerka), 85 (Charles Palmer, Jr.), 86 (Charles Palmer, Jr., amended motion), 78 (Charles Palmer, Jr.)[1]. This Order considers the common requests by defendants for non-dispositive discovery relief. A separate Report & Recommendation will consider the various suppression motions made by some of these moving defendants.

    Responses to these motions were duly filed (Docket Nos. 90 (Government response to Palmer, Sr., motion), 87 (response to Krajas's motion), 95 (supplemental response to Krajas's

---

[1] Eleven defendants were named in this Indictment, nine of them have moved or joined in motions; Vunnal Blair has not moved and, as discussed below, Gregory Miller has not moved.

motion), 91 (response to Smerka motion), 89 (response to Stone motion), 88 (response to Palmer, Jr., motion)) and the Government also moved for reciprocal discovery from these defendants (Docket Nos. 90 ¶ 32; 87 ¶ 31; 91, ¶ 15; 89, ¶ 13; 88, ¶ 31). These motions were argued on March 28, 2012 (text minute entry, Mar. 28, 2012), with further briefing ordered on the Franks hearing issue by April 10, 2012, and Government response by April 20, 2012. That briefing was filed (see Docket Nos. 93 (Krajas Memo. of Law), 95 (Government supplemental response to Krajas)) and the motions were initially deemed submitted as of April 20, 2012. Meanwhile, on March 30, 2012, this Court had to recuse as to one defendant, Gregory Miller (Docket No. 92)[2] and Chief Judge Skretny referred the entire case to Magistrate Judge Schroeder (Docket No. 98). This referral was modified, however, on June 13, 2012, to refer this case (save Miller) back to the undersigned (text Order, June 13, 2012). At a status conference held on June 19, 2012, this Court deemed the motions fully submitted as of that date and calculated the time remaining on the Speedy Trial Act clock (text of minute entry, June 19, 2012).

     Charles Palmer, Sr., moved, on April 10, 2012, for a two-week extension of the supplemental motion date (Docket No. 94) and Krajas separately moved on April 18, 2012, for extension of time (to May 4, 2012) to file his supplemental motion (Docket No. 97). These motions were never formally decided, although Krajas filed his memorandum on May 8, 2012 (see Docket No. 99) and Palmer, Sr., did not file any supplemental papers. Upon further consideration, the preliminary Speedy Trial Act calculation made on June 19, 2012, is amended; the Speedy Trial Act has not expended any time given this pending motion for extension of time,

---

[2]At a status conference before Magistrate Judge Schroeder, Miller and the Government reported that a plea agreement was reached and plea date set before Chief Judge Skretny, text of minute entry, June 13, 2012.

see 18 U.S.C. § 3161(h)(1)(D).  Those motions (Docket Nos. 94, 97) are now **denied as moot** given Krajas' filing and this Court's determination of the underlying motions.

## BACKGROUND

Defendants were indicted in a multiple count Indictment for conspiracy by all eleven defendants to possess with intent to distribute cocaine, cocaine base, marijuana, and hydrocodone from at least November 2010 to the date of the Indictment (Docket No. 1, Indict., Count 1).  Two defendants also were charged with seven individual counts of possession of cocaine, cocaine base or marijuana by George Krajas or Charles Palmer, Sr., or by both Krajas and Palmer, Sr., together (id. Counts 2-8).  The Indictment also charges a forfeiture allegation against premises on Broadway in Buffalo, New York (id. at pages 7-8).  The alleged possessions occurred in November of 2010, May and June of 2011 (id., Counts 2-8).

## DISCUSSION

I.  Informant Information

Defendants seek the pre-trial disclosure of the identity of any informants in this case (e.g., Docket No. 72, Stone Atty. Affirm. ¶¶ 7-11; Docket No. 74, Palmer, Sr., Atty. Affirm. ¶¶ 11-16).  In general, the Government objects to defendants' expansive discovery requests (e.g., Docket No. 90, Gov't Response re Palmer Sr. ¶ 10).

The Government is not required to furnish the identities of informants unless it is essential to the defense.  Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.), cert. denied, 489 U.S. 1089 (1988).  Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial.  United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

3

Defendants each have not established that the pre-trial disclosure of the identities of any informants is essential to their respective defenses. This request is **denied**.

II.     Discovery

Defendants next seek various forms of discovery. The Government responds that in general it has complied fully with its discovery obligations to each defendant (e.g., Docket No. 90, Gov't Response to Palmer, Sr., Motion ¶ 1).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

III.    Brady

Defendants each have requested that the Government disclose all materials potentially favorable to them, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 105 (1979), and their progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [Government's] witness," United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendants' motions identify numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain. The Government's written response is that it acknowledged its obligations and declared that it was not in possession of any Brady material (e.g., Docket No. 90, Gov't Response to Palmer, Sr., ¶¶ 4-5, 8-9).

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this District (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

IV.   Federal Rules of Evidence 404(b), 608, 609

In response to defendants' motions for disclosure of Federal Rules of Evidence 404(b), 608, and 609 materials regarding defendants' respective prior crimes and other bad acts, the Government offers to provide reasonable notice of these prior acts in advance of trial (e.g., Docket No. 89, Gov't Response to Stone Motion ¶ 11). This **is sufficient**.

V.    Jencks Act

Defendants seek immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500. The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until after the witness has testified at trial. In this case, the Government has agreed to disclose this information at the time set by the District Court (e.g., Docket No. 90, Gov't Response to Palmer, Sr. ¶ 3). This is acceptable; the

5

Government shall disclose Jencks Act information **prior to trial as ordered in the District Court's final pretrial Order**.

VI.     Preservation of Evidence

Defendants next seek preservation of agents' rough notes and other evidence. Generally, the Government does not address this issue, but declares generally that it has and will comply with discovery and disclosure rules (e.g., Docket No. 89, Gov't Response to Stone ¶¶ 6, 7). If it has not done so already, the Government **is to preserve agents' rough notes**.

VII.    Bills of Particulars

Each defendant next moves for a Bill of Particulars. Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. The Government opposes these requests because most of the information sought particularized is presented in voluntary discovery and in the criminal Complaint or is information beyond the scope of a Bill of Particulars (e.g., Docket No. 88, Gov't Response to Stone ¶ 12).

Bills of Particulars are to be used only to protect a defendant from double jeopardy, to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), but the Government need not prove overt acts in furtherance of the conspiracy, United States v. Knuckles, 581 F.2d

305, 311 (2d Cir.), cert. denied, 439 U.S. 986 (1978), or particularize on the facts surrounding the formation of the conspiracy or when a given defendant joins it, United States v. Iannelli, 53 F.R.D. 482 (S.D.N.Y. 1971) (id. ¶ 29).  While it is within this Court's sound discretion to order the filing of a Bill of Particulars, Wong Tai v. United States, 273 U.S. 77, 82 (1927), the burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights, id. (Docket No. 55, Gov't Atty. Aff. ¶ 24).  Any particularization confines the Government's proof to the particulars furnished, United States v. Glaze, 313 F.2d 757, 759 (2d Cir. 1963); United States v. Murray, 297 F.2d 812, 819 (2d Cir.), cert. denied, 369 U.S. 828 (1962) (id. ¶ 27).

Count I of the Indictment alleges that "beginning sometime prior to in or about November 2010, the exact date being unknown, and continuing up to the date of the return of this Indictment, in the Western District of New York, and elsewhere, the defendants," knowingly, willfully, and unlawfully conspired to agree to possess cocaine, cocaine base, marijuana, and hydrocodone with the intent to distribute and to distribute the same (Docket No. 1, Indict., Count 1).  Upon review of the Indictment and the extent of discovery produced in this case to defendants, this Court finds that each defendant is **not entitled** to a Bill of Particulars from the Government here inasmuch as each defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

VIII.   Grand Jury Minutes

Palmer, Sr., and Krajas (Docket Nos. 74, Palmer, Sr., Atty. Affirm. ¶¶ 73-74; Docket No. 75, Krajas Motion at 17-18) each seek to review the Grand Jury minutes (as well as Palmer,

Jr., and other defendants joining in these motions). Palmer, Sr., states that he has particularized need to be informed of the evidence against him (Docket No. 74, Atty. Affirm. ¶ 74), while Krajas claims that he faces a bare bones Indictment that does not inform him of the witnesses against him (Docket No. 75, Krajas Motion at 18).

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury. The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id. Defendants had to show that they have a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988); see United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *14-16 (S.D.N.Y. June 29, 1994) (granting in camera review of Grand Jury minutes and reserving decision on motion to dismiss Indictment). A defendant must state a particularized need for these transcripts "in order to present a vigorous defense" which outweighs the principle of Grand Jury secrecy, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). There are occasions "when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly 'disclosure is wholly proper where the ends of justice require it,'" Pittsburgh Plate Glass, supra, 360 U.S. at 400 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940)). The burden is upon the defendant to show a particularized need exists that outweighs the policy of Grand Jury secrecy, id. Particularized need includes impeachment of a witness at trial, refreshing recollection, and testing witness credibility, United States v. Proctor &

Gamble Co., 356 U.S. 677, 683 (1958). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," Torres, supra, 901 F.2d at 233, and (even if disclosed) "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants," Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Torres, supra, 901 F.2d at 233.

As was held in the Pittsburgh Plate Glass case, supra, 360 U.S. at 400, defendants have not made a showing of particularized need, but cf. Dennis v. United States, 384 U.S. 855, 872-73 (1966) (Court found that defense did not make out a particularized need, listing the circumstances of particularized need). Merely stating the desire to make a vigorous defense in general or the lack of particularization in the Indictment does not show a particular need for Grand Jury testimony (such as specifying which witness's testimony is necessary for that vigorous defense) or show whether that Grand Jury testimony is needed for impeachment, refreshing recollection or testing credibility.

The motions on this ground are **denied**.

IX.   Federal Rules of Evidence 702, 703, 705, Expert Disclosure

Charles Palmer, Jr., seeks a list of Government expert witnesses and disclosure of their reports and summaries of their testimony (Docket No. 86, Palmer, Jr., Affirm. ¶ 49). The Government does not expressly consider this motion, but argues generally that discovery has been complied with (Docket No. 88, Gov't Response to Palmer, Jr., ¶¶ 1, 6). If not already produced, the Government **is to furnish expert disclosure**, Palmer, Jr.'s, motion for this relief is **granted**.

IX. District Court Motions

Defendants seeks various forms of relief that are best determined by the District Judge that would hear the trial of this case. These include their request for an audibility hearing, exclusion of hearsay under Crawford v. Washington, 541 U.S. 36 (2004), production of the Government's Summaries, defense participation in voir dire, and Smerka's severance motion (Docket No. 84, Atty. Affirm. ¶¶ 64-69). These issues are better considered by the District Judge prior to trial and are **deferred** for that consideration.

X. Franks Hearing

    A. Palmer, Sr., and Palmer, Jr.

Palmer, Sr., (and those joining as it applies to them, including Palmer, Jr., Docket No. 78, Palmer, Jr., Atty. Affirm. ¶ 3; Docket No. 86, Palmer, Jr., Atty. Affirm. ¶ 109) next seeks a Franks hearing[3] contending that the issuing judge was not informed that boilerplate text was used in the supporting affidavit and that more surveillance occurred than was stated in that affidavit to justify the (wiretap) warrant (Docket No. 74, Palmer, Sr., Atty. Affirm. ¶¶ 103-08), seeking pre-hearing disclosure on the Franks issues (id. ¶¶ 109-12). The Government opposes a Franks hearing for its wiretap applications, arguing that defendants failed to plead a proper basis for that hearing (Docket No. 90, Gov't Response to Palmer, Sr., Motion ¶ 28; see also Docket No. 88, Gov't Response to Palmer, Jr., Motion ¶ 27). Defendant only points to the use of boilerplate text and that alone does not sufficiently raise the issue for a Franks hearing (Docket No. 90, Gov't Response to Palmer, Sr., Motion ¶¶ 28-31; see also Docket No. 88, Gov't Response to Palmer, Jr., Motion ¶¶ 28-30).

---

[3]See Franks v. Delaware, 438 U.S. 154 (1978).

A defendant is entitled to a hearing under Franks if a substantial showing is made that the warrant affidavit contains a false or omitted statement; that the statement was included intentionally or recklessly; and that the statement was an integral to the probable cause finding, Franks, supra, 438 U.S. 154 (see, e.g., Docket No. 88, Gov't Response to Palmer, Jr., Motion ¶ 27). Palmer, Sr., and Palmer, Jr., each fail to show that any false or omitted statement was in the warrant affidavit and that the falsity or omission was integral to the probable cause finding. Thus, their respective motions for a Franks hearing are **denied**.

B.   Krajas

Krajas also moves for a Franks hearing regarding omissions from the record for issuance of the wiretap Order, complaining that the agent's affidavit contains boilerplate allegations that have been rejected in other courts (Docket No. 76, Krajas Atty. Affirm. ¶¶ 29-35, 34). Krajas argues that there were material omissions in the wiretap application by not disclosing the criminal background of CS-1, the confidential source relied upon as the basis for seeking the wiretap, as well as purported personal bias of CS-1 (Docket No. 93, Krajas Memo. at 2-3). Looking at whether probable cause was established, Krajas points out that the affiant agent relied upon information provided by confidential sources (id. at 7; Docket No. 83, Ex. A, Aff. of Marcello Falconetti at 4-5). Krajas complains that it is not clear from the affidavit whether one or multiple confidential sources were relied upon (Docket No. 93, Krajas Memo. at 7). As for CS-1, Krajas argues that the omissions on the reliability of CS-1 materially affected the application (id. at 8). As for CS-2, Krajas argues alternatively that CS-2 rejects the necessity argument for wiretap (since it is believed that CS-1 lived in Krajas' household, see Docket No. 76, Krajas Atty.

Aff. ¶ 21[4]) and that CS-2 was unreliable (Docket No. 93, Krajas Memo. at 8-12). In anticipation of a Franks hearing, Krajas also seeks pre-hearing disclosure of all documents which might tend to show that the Government had failed to disclose all of the information required by statute (Docket No. 76, Krajas Atty. Aff. ¶¶ 36-38), listing specific categories of documents (id. ¶ 39).

The Government responds that Krajas' allegations about the facts not disclosed to the issuing judge (about CS-1 living with defendant, his theft of $6,000, and pending criminal charges against him) did not affect the Court's probable cause decision in issuing the wiretap Order (Docket No. 87, Gov't Response to Krajas Motion ¶ 28). The Government concludes that sufficient probable cause was shown for issuance of the wiretap Order (id. ¶ 30). In its supplement, the Government points out that the affiant agent, Marcello Falconetti, was not aware of CS-1's criminal charges before or during the wiretaps (Docket No. 95, Gov't Supp'al Response at 3-4; id., Ex. A, Falconetti Aff. of Apr. 9, 2012, ¶¶ 3-4). The omission of CS-1's criminal record was not necessary for the probable cause determination that Krajas was committing drug trafficking crimes over his cellular telephone and Krajas failed to show that this omission was intentional or reckless (Docket No. 95, Gov't Supp'al Response at 4-5, Ex. B (wiretap Order)). Even if CS-1 is excluded from consideration, the Government concludes that this Court had ample information to support probable cause from CS-2, from prior purchases of cocaine by CS-2 from Krajas and controlled purchases from Krajas by CS-2 and CS-2 stating that Krajas used the telephone to conduct drug trafficking (id. at 5-6).

---

[4]The Government declines to identify CS-1 or confirm Krajas' identification, Docket No. 87, Gov't Response to Krajas, at 14 n.1.

Again, Krajas needs to make a substantial showing that the warrant affidavit contains a false or omitted statement; that the statement was included intentionally or recklessly; and that the statement was an integral to the probable cause finding in order to be entitled to a Franks hearing, Franks, supra, 438 U.S. 154.  A review of the wiretap application shows that probable cause was established through CS-2 activities and interactions with Krajas.  According to Agent Falconetti, CS-2 had made drug transactions with Krajas by calling Krajas on the cellular telephone that was to be monitored (Docket No. 83, Krajas Ex. A, Wiretap Application, Ex. C, Falconetti Aff. ¶¶ 17(a)(i), (ii), 20-34).  CS-1, who Krajas now identifies and objects to omissions about his background, connects Palmer, Jr., as the supplier of cocaine to Krajas (id. ¶¶ 34(a), 16, 16(a)(i)-(ii)).  CS-1 states that Krajas uses his cellular telephone to then sell these drugs (id. ¶ 16(a)(v)).  But Krajas points to instances where CS-2 controlled when consensual conversations were recorded and, when not recorded, how Government agents had to rely upon CS-2's version of the conversations (Docket No. 93, Krajas Memo. at 11-12).

Krajas has established that facts were omitted from Chief Judge Skretny in applying for the wiretap and that these statements (and the credibility findings that could be drawn from them) were integral to finding probable cause for the wiretap.  Therefore, a Franks hearing **will be held**; a separate Order will notice that hearing.

XI.     Reciprocal Discovery

As noted above, the Government in responding to these defendants seeks reciprocal discovery from them (Docket Nos. 90 ¶ 32; 87 ¶ 31; 91, ¶ 15; 89, ¶ 13; 88, ¶ 31).  Although some of the defendants joined in the moving defendants' motions, the Government responded to the individual motions and sought reciprocal discovery expressly in those responses; the Government

did not file either a further motion for discovery from the joining defendants or file an omnibus response that presumably would include the joining defendants' motions. Defendants (movants and those joining) apparently have no opposition to the reciprocal motions. Under Rule 16, the Government is entitled to production of documents in a defendant's possession that the defendant intends to use in his case-in-chief. Each defendant is reminded of his or her obligations under Rule 16 and Federal Rules of Evidence 803(24) and 804(b)(5) to produce pursuant to the Government's notice for reciprocal discovery. The Government's motions are therefore **granted**. The issue, then, is whether this grant includes the joining defendants as well as the movants. Borkowski joined as to particular relief asserted by some of the defendants, including discovery as sought by Palmer, Sr. (Docket No. 80), as has Alexander (Docket No. 81, Alexander Atty. Affirm. ¶ 3a.), Simmons (Docket No. 77, Simmons Atty. Affirm. ¶ 3), and Carluccio joined in the motions filed by Krajas and Palmer, Sr. (Docket No. 82, Carluccio Atty. Affirm. ¶ 3; see also Docket Nos. 84, 78, 85-86 (moving defendants' joinder motions)). If the moving defendants are bound to provide reciprocal discovery to the Government, those joining them for their discovery relief are also bound to produce reciprocal discovery. Since the joining defendants did not qualify their joinder or exclude seeking discovery relief, they are bound by the Government's reciprocal discovery motion. **Therefore, all moving and joining defendants are to produce reciprocal discovery**.

CONCLUSION

For the reasons stated above, certain defendants' motions joining in omnibus motions filed by codefendants (Docket Nos. 81 (Alexander); 80, 96 (Borkowski); 82 (Carluccio); 77 (Simmons); 84 (Smerka); 85, 86, 78 (Palmer, Jr.)) are **granted**; defendants' omnibus motions

(Docket Nos. 74, Palmer, Sr.; 75, 76, Krajas; 84, Smerka; 72, Stone; and 85, 86, Palmer, Jr.) and are **granted in part, denied in part or deferred for consideration by the District Judge** as discussed in detail above.  In particular, as for defendants' motions for a <u>Franks</u> hearing, it is **denied** as to Palmer, Sr. (Docket No. 74) and those defendants joining him, and **granted** as to Krajas (Docket No. 76).  That <u>Franks</u> hearing as to Krajas will be set in a separate Order.

The Government's motions for reciprocal discovery (Docket Nos. 90 ¶ 32; 87 ¶ 31; 91, ¶ 15; 89, ¶ 13; 88, ¶ 31) is **granted** as to all moving and joining defendants.

The motions by Palmer, Sr. (Docket No. 94), and Krajas (Docket No. 97) for extension of time to supplement their earlier motions are **denied as moot**.

So Ordered.

                                                     */s/ Hugh B. Scott*
                                                     Honorable Hugh B. Scott
                                                     United States Magistrate Judge

Dated: Buffalo, New York
       July 19, 2012