Charles Palmer, pro se
Reg. No. 05138-055
P.O. Box 2000
Joint Base MDL, NJ 08640



United States of America
        Respondent,

        -vs-

Charles Palmer, pro se
        Petitioner.                    /
_____/

In the United States

District Court for the

Western District of NY

Cr. No. ~~15-2289~~
        11-CR-202


            Petitioner, Palmer's Motion for Leave
            To File to Vacate, Set Aside, or Correct
            __His Sentence under 28 U.S.C. § 2255__


        Herein appears Petitioner, Charles Palmer, pro se,

pursuant to 28 U.S.C. § 2255, and respectfully moves this

Honorable Court for leave to file to vacate, set aside, or

correct his sentence.  The accompanied memorandum of points and

authorities is submitted in support thereof.


                            Respectfully submitted on this
                            22 day of June, 2017.


                    By: Charles Palmer  Date: 06/22/2017
                        Charles Palmer, pro se

In the United States District Court
Western District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| Respondent, | ) | |
| | ) | |
| -vs- | ) | Cr. No. 15-2289 |
| | ) | |
| | ) | |
| Charles Palmer, pro se | ) | |
| Petitioner. | / | |

Memorandum of Points and Authorities in
Support of Palmer's Motion for Leave to File
To Vacate, Set Aside, or Correct His Sentence

## I. Posture of Action

This memorandum is an action brought by the Petitioner, Charles Palmer, pro se (hereinafter, "Palmer"), in support of his motion for leave to file to vacate, set aside, or correct his sentence.  He succinctly states for the following reasons:

## II. Procedural Posture

On December 22, 2014, Palmer appeared before the United States District Court for the Western District of New York, and pled guilty to charges that he conspired to distribute and to possess with an intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1),

1

(b)(1)(A), and that he thereby violated the conviction of
supervised release imposed at the time of his 2005 sentencing for
an earlier federal conviction for conspiring to distribute a
controlled substance.  The presentence investigation report
(PSIR) was issued by the probation office and signed by Palmer on
March 5, 2015.  On April 22, 2015, Palmer was sentenced to a 144-
month term of imprisonment and five years of supervised released
for the instant offense, and an additional concurrent 51 months
sentence for the violation of his earlier term of supervised
release.  The judgment was entered on April 28, 2015.  The court
appointed Joseph J. Terranova, Esq. to represent Palmer during
the change of plea and sentencing phases of the case.

On July 8, 2015, Palmer filed a pro se notice of appeal
for an appointment of counsel to represent same.  On August 17,
2015, the Court of appeals for the Second Circuit appointed
Georgia J. Hide, Esq., to represent the appeal.  On February 29,
2015, Ms. Hide filed an Anders brief, as in Anders v. California,
386 U.S. 738 (1967), positioning to withdraw from the appeal and
allow the Second Circuit to decide on its own accord whether the
record of the district court proceedings possessed any colorable
legal grounds that could be determined on direct appeal, because
according to Ms. Hide, there were no nonfrivolous claims to
raise.  In May of 2016, Palmer filed a pro se appellate brief in
opposition to Ms. Hide's Anders brief.  On August 26, 2016, the

2

government filed to dismiss the appeal or for summary affirmance. On October 7, 2016, Palmer filed a response to government's summary affirmance opposition.

On January 1, 2017, the Second Circuit entered judgment, granting both Ms. Hide's motion to withdraw her Anders brief, and the government's motion to dismiss the appeal as procedurally barred by the appellate waiver provisions of the plea agreement. No writ of certiorari was issued. The foregoing positition for habeas corpus relief under 28 U.S.C. § 2255 supervenes the aforementioned proceedings and occurrences.

## III. Factual Posture

About one week before Palmer's December 22, 2014 court date, the government conducted a pre-plea agreement conference with Palmer while he was still detained in pre-trial detention. Mr. Terranova did not accompany Palmer and therefore was not present to assist Palmer in the plea bargaining negotiations and/or signing of the written plea agreement during the conference session. Thereupon, Palmer agreed, inter alia, to waive his rights to appeal and collaterally attack any component of a sentence imposed by the court of 20 years imprisonment or less, a fine of §10,000,000 or less, and any term of supervised release, notwithstanding the manner in which the court determines

the sentence.   Palmer reserved his rights to challenge the
validity of and/or veracity of the alleged cocaine amount relied
on by the probation department (PD), as well as his prior New
York State conviction and his classification as a career
offender.   In so waiving such rights, Palmer acknowledged he
understood that by agreeing not to collaterally attack the
sentence, he was waiving the right to challenge the sentence in
the event that in the future he became aware of previously
"unknown facts or a change in the law," which he believes would
justify a decrease in his sentence.   See (Written Plea Agreement,
denoted: "WPA" @ p. 3 ¶ 17-18).   In turn, the government waived
its right to appeal any component of a sentence imposed by the
court of 10 years imprisonment or greater, a fine of any amount,
and a term of supervised release of 5 years or greater,
notwithstanding the manner in which the court determines the
sentence. (WPA @ p. 9, ¶ 19).

    On December 22, 2014, Palmer entered a change of plea,
and pled guilty as charged.   See (Trial Record, denoted: "Tr" @
p. 2-3).   The court then placed Palmer under oath (Tr. @ 2-3).
The court did not reiterate the terms of the collateral attack
waiver provisions as described above in the WPA.   In fact, the
court totally abstained from advising Palmer on the collateral
attack waiver at all during its Rule 11 plea colloquy.   (Tr. @ 3,
8 and 31).   On March 5, 2015, the PD conducted a PSIR interview.

The total amount of cocaine, including the additional relevant conduct amount of 666 grams of powder cocaine and 1,111 grams of cocaine base (crack) was one of the main focus points discussed between Palmer and the PD at the March 5, 2015 PSIR interview session.

During the April 22, 2015 sentencing phase, the government pressed hard forward, not just for the type and quantity of cocaine arbitrarily attributed to Palmer out of the total five kilograms or more amount alleged in the indictment, but for the alleged 666 grams of cocaine powder and 1,111 grams of cocaine base relevant conduct amount attributed to him in the PSIR. See (Sentencing Record, denoted: "Str" @ 3-5). The government also pressed hard forward to qualify Palmer as that of a career offender. (Str. @ 5, 8, 20). The sentencing course adopted the information ascertained in the PSIR including the relevant amount of cocaine and cocaine base, plus Palmer's alleged status of a career offender. (Str. @ 21). However, upon considering mitigating factors not adequately taken into consideration by the sentencing commission with respect to Palmer's career offender status, the court variance departed downwardly from Palmer's career offender guideline range and sentenced him to 144 months or 12 years imprisonment. (Str. 21-24).

Ms. Hide filed an <u>Anders</u> brief after she was appointed

to represent the appeal.  Ms. Hide argued against the appeal in
the Anders brief.  She failed to challenge the invalid process by
which the appeal and collateral attack waiver were produced.  She
also failed to investigate and explore the entire record through
her Anders brief before arguing against the type and quantity of
cocaine allegedly involved, including the relevant conduct
amount.  As well as failing to challenge the validity of the
prior New York State convictions and his status as a career
offender.

## IV. Arguments

As a threshold matter, Palmer impugns that he was
denied procedural due process when he experiences structural and
procedural errors; notwithstanding, the invalid process by which
the direct appeal and collateral attack waiver provisions of his
"guilty plea - plea agreement" were produced with the ineffective
assistance of counsel(s), such that, the waiver provisions are
constitutionally infirm.  "It is well settled that before a trial
judge can accept a guilty plea, the defendant must be advised of
the various constitutional rights that he is waiving by entering
such a plea."  Boykins v. Alabama, 395 U.S. 238, 243, 89 S. Ct.
1709, 23 L. Ed. 2d 274 (1969).  In that, the waiver provisions
should not foreclose the foregoing collateral attack proceeding
under the § 2255 now in process.

Moreover, Palmer utilizes his "actual innocence" of the type and total amount of cocaine purportedly involved, including the relevant conduct amount, along with his "actual innocence" of career offender status in light of U.S. v. Mathis, 136 S. Ct. 2243 (2016), as a gateway to challenge his otherwise procedurally barred constitutional claims under collateral attack.

Most importantly, Palmer rightfully challenges the entire plea, sentencing, and appellate procedural "processes" by which his "sentence" was produced and affirmed. Simply, because the "processes" and "sentence" combined effects Palmer's substantial rights and therefore constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

A. Legal Standard

Title 28 U.S.C. § 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the Court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Id. at § 2255(a). See also, Hill v. U.S., 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417

(1962).   A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice."  See Craziaro v. U.S., 83 F.3d 587, 589-90 (2nd Cir. 1996); U.S. v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 855 (1979).

        Generally, § 2255 Courts, "look with disfavor on summary rejection of a habeas petition." See, u.s. v. Aiello, 900 F.2d 528, 534 (2nd Cir. 1990), the text of a § 2255 provides that the court need not conduct an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255 (b) (2014).  Palmer submits that, there is a need for an evidentiary hearing in this case, because the motions, files and records of the case exclusively show that he, indeed, is entitled to habeas relief.

B. The Invalid Direct Appeal
   And Collateral Attack
   Waiver Provisions

        Palmer first takes umbrage at the invalid direct appeal and collateral attack waiver provisions; insofar as, the waivers were not made knowingly, intelligently, and voluntarily, and therefore were not valid waivers of his constitutional rights.

"There is no general bar to waiver of collateral attack rights in plea agreements." See Frederick v. Warden, 308 F.3d 192, 195 (2nd Cir. 2002). However, the waiver does not foreclose a petitioner from attacking "the validity of the process by which the waiver has been procured, here, the plea-agreement." Frederick, 308 F.3d at 195.

Rule 11 of the Federal Rules of Criminal Procedure explicitly requires a court, before accepting a plea of guilty, to inform the defendant of a number of specific matters.  See Fed. R. Crim. P. 11 (b)(1)(A)-(N).  Rule 11 is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.," U.S. v. Maher, 108 F.3d 1513, 1520 (2nd Cir. 1997). The Second Circuit had "adopted a standard of strict adherence to Rule 11." U.S. v. Rodriguez, 725 F.3d 271, 277 n.3 (2nd Cir. 2013).

Where, as here, the district judge failed to adhere to the strict mandates of Rule 11, before accepting Palmer's plea of guilty, it can be said that the process by which the direct appeal and collateral attack waiver provisions were procured is statutorily and constitutionally invalid.  To be more specific, the provisions of the plea agreement, Rule 11 hearing, and

related occurrences which rendered the waivers invalid in this case are as follows:

1. The "Oath" Process

The December 22, 2014 plea hearing court clearly violated the mandate enunciated in Rule 11(b)(1)(A) of Fed. R. Crim. P. during the plea colloquy, when it placed Palmer under "oath" without first informing him of the U.S.'s right to use against him any false statement that he made under oath, even in a later prosecution. Id. The "oath" process provides in pertinent part:

THE COURT: Okay. We've been here a lot of times. And you know, you and Mr. Terranova have spent some quality time together. I know, over the course of time. I'm going to have you placed under oath, okay?

(Defendant Sworn)

(Tr. at 2-3).

The court omitted the sworn declaration process. However, the record is completely devoid of whether the court adhered to the strict mandate of Rule 11(b)(1)(A), while placing

Palmer under oath.   Palmer has demonstrated actual, as well as a
rebuttable presumption of, "prejudice" from the Court's Rule 11
violation in this respect, because (1) he did not agree in his
plea agreement that the U.S. could have used any of his
statements under oath against him; (2) he was not made aware by
the court, government, PD, or Mr. Terranova of all the possible
consequences of being untruthful and/or the possibility of any
prosecution for perjury under 18 U.S.C. §§ 1621 and 1623; (3) the
court failed to warn Palmer that under Rule 11(c)(5) it had a
right to place him under oath prior to questioning him concerning
the guilty plea, since Rule 11(c)(5) is phrased in mandatory
terms.   See U.S. v. Journey, 544 F.2d 633 (2nd Cir. 1976)
(criticized in U.S. v. Hausen, 57 MJ 815, 2002 CCA LEXIS 293
(NMCCA 2002)); and (4) but for the Rule 11 error, he would not
have pled guilty.   See U.S. v. Vana, 404 F.3d 144, 151 (2nd Cir.
2005) ("In order to establish a Rule 11 violation affected
'substantial rights,' the defendant must show 'That there is a
reasonable probability that, but for the error, he would not have
entered the plea,'") (quoting, U.S. v. Dominguez-Benitez, 542
U.S. 74, 83, 124 S. Ct. 3333, 159 L. Ed 157 (2004)).


2. The Factual Basis


        Following the invalid "oath" process as described
above, the Rule 11 court then proceeded with the plea allocution

11

to establish the record related to this case.   (Tr. at 3).   In so
doing, the Rule 11 Court failed to assure itself that a factual
basis existed when it failed to ensure that Palmer understood the
nature of the charges, via, the factual basis in violation of
Rule 11(b)(3) of Fed. R. Crim. P., after Palmer did not admit to
the facts as a whole, during the Rule 11 plea colloquy when he
reserved his rights to challenge the validity and veracity of
those relevant facts at sentencing.

The Rule 11 Court's factual basis allocution provides
in relevant part:

THE COURT: Okay.   The factual basis starts at paragraph
5.   And there's a bunch of subparagraphs that go to the bottom of
page 3. All of that, I take it, you've gone over carefully.   Is
it accurate, and did you do what's charged there?

THE DEFENDANT: What's listed as far as the drugs?

MR. TERRANOVA: We've reserved some rights to address
those issues, Judge.   But I think the substance is something that
my client's willing to admit to in terms of his behavior as to
the nature of the substances that were either possessed or sold.
My client's reserved his rights in some circumstances to address
whether or not those items belong as part of the relevant

conduct.

(Tr. at 9).

Under Federal Rule of Criminal Procedure 11(b)(3),
"Before entering judgment on a guilty plea, the court must
determine that there is a factual basis for the plea." U.S. v.
Culbertson, 670 F.3d 183, 191 (2nd Cir. 2012).   Rule 11(b)(3)
requires the district court to assure itself simply that the
conduct to which the defendant admits is in fact an offense under
statutory provisions under which he is pleading guilty." Maher,
108 F.3d at 1524 (discussing the predecessor to Rule 11(b)(3),
Rule 11(F).   The elements of a conspiracy to distribute or possess
with intent to distribute narcotics under 21 U.S.S. § 846 are
"the existence of such a conspiracy and the defendant's willful
joining it." U.S. v. Story, 891 F.3d 988, 992 (2nd Cir. 1989).

In addition, where the indictment charges an aggravated
narcotics offense that carried an enhanced penalty based on a
particular drug type and quantity pursuant to 21 U.S.C. § 841,
"drug quantity must be deemed an elemental element." See, e.g.,
U.S. v. Gonzalez, 420 F.3d 111 (2nd Cir. 2005).   Thus, in a
guilty plea, a defendant cannot be convicted of an aggravated
drug offense unless the statutory drug quantity is proved by his
own admittance. Gonzales, Id. at 132-33.

13

Palmer impugns that his failure to explicitly admit, rather, challenge the statutorily prescribed type and quantity of cocaine allegedly involved, including relevant conduct amount, means that the Rule 11 Court failed to assure itself that a factual basis existed before accepting Palmer's guilty plea for the offenses charged.  See, Gonzalez, id., at 133-34.  but for this particular Rule 11 error, Palmer would not have pled guilty, rather insisted on going to trial.

3. Other Series of Rule
   11 Violations

Following the aforementioned errors, the Rule 11 court contained a series of other Rule 11 violations throughout the duration of the guilty plea allocution.  The court failed to ask Palmer: (1) whether he was coerced into pleading guilty by anyone, in violation of Rule 11(b)(1)(A); (2) whether he had a right to be represented by counsel and if necessary have the court appoint counsel at trial and at every other stage of the proceedings, in violation of Rule 11(b)(1)(D).  Plus, Palmer did not acknowledge that he understood he had the right to be represented by an attorney or appointed one as described by the Rule; (3) whether he was susceptible to any applicable forfeiture, in violation of rule 11(b)(1)(J).  Neither the PD nor government outlined the forfeiture provision in the written plea

14

agreement, nor the court during the plea colloquy.  Plus, Palmer
did not agree on the record that he had read and understood the
plea agreement with respect to forfeiture; and (4) whether Palmer
"waived to collaterally attack" his sentence, in violation of
Rule 11(b)(1)(N).  CF, Rule 11(b)(1)(N) requires the court to
advise the defendant of "the terms of any plea-agreement
provision waiving the right to appeal and/or collaterally attack
the sentence, as a matter of law." Id.  But for the series of
errors demonstrated above, Palmer would not have pled guilty,
instead insisted on going to trial.

          In light of all the deficiencies enumerated above
subsections (B1-3) of this § 2255 motion, Palmer has clearly
shown that his plea is "infected" with fundamental errors that
inherently result in complete miscarriage of justice or an
omission inconsistent with rudimentary demands of fair procedures
to obtain collateral relief. See U.S. v. Tsang, 759 F. Supp. 72
(2nd Cir. 1990); Gunn v. U.S., 419 Fed. App'x 106 (2nd Cir.
2010).  This is evident, where the deficiencies in the court's
rule 11 colloquy affected Palmer's decision to plead guilty, and
where the court failed to follow the routinely minimal procedures
put in place to protect Palmer's rights.

          It can be said, therefore, that the process by which
the direct appeal and collateral attack "waiver provisions" were

procured, were statutorily and constitutionally invalid.  And,
therefore the collateral attack waiver should not foreclose the
current habeas corpus proceeding based on those premises.

C. Dual Ineffective Assistance
   Of Both Trial and Appellate
   Counsels

        As detailed in the above procedural posture, Palmer was
represented by Mr. Terranova during pre-trial, at the plea and
sentencing phases, and by Ms. Hide on the appellate level phase.
(collectively, "counsels").  He now impugns that he received
"duel-ineffective assistance" from both counsels on all level-
phases of his case.  The deficient performances of both counsels
rendered Palmer's guilty plea - plea agreement, including the
"waiver" of his direct appeal and collateral attack rights,
constitutionally infirmed.

        "In order to prevail on an ineffective assistance of
counsel claim, a defendant must show first that his counsel's
performance was deficient and second that the deficiency caused
actual prejudice to his defense."  Frederick, 308 F.3d at 197
(citing Strickland v. Washington, 466 U.S. 668 687, 104 S. Ct.
2052, 80 L. Ed. 2d 674 (1984)).  In a case, such as here, where
Palmer has waived his rights to collaterally attack his sentence,
"to raise claims despite a guilty plea or appeal waiver, Palmer

16

must show that the plea agreement was not knowing and
voluntary . . . because the advice he received from counsel was
not within acceptable standards." <u>Paris v. U.S.</u>, 529 F.3d 134,
138 (2nd Cir. 2008).  To establish prejudice, Palmer must prove
that "there is a reasonable probability that but for counsel's
errors, he would not have pleaded guilty and would have insisted
on going to trial." <u>Hill v. Lockart</u>, 474 U.S. 52, 59, 106 S. Ct.
366, 88 L. ed. 2d 203 (1985).  Palmer demonstrates below where
both counsels were deficient and prejudice his defense at each
critical stage of level phase of his case.


1. Failure to Attend the Plea
   Bargaining Negotiations
   <u>Conference</u>


     The Sixth Amendment right to counsel includes effective
representation during the plea negotiation process.  See,
<u>Missouri v. Frye</u>, 566 U.S. 134, 148, 132 S. Ct. 1399, 182 L. Ed.
2d 379 (2012); <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S. Ct.
1473, 176 L. Ed. 2d 284 (2010).  A critical obligation of counsel
is to advise his client of the advantages and disadvantages of a
plea agreement. <u>Padilla</u>, 559 U.S. at 370; <u>Frye</u>, 566 U.S. at 453.


     The level of plea bargaining negotiations at the plea
conference were way beyond Palmer's ability to negotiate on his
own accord.  Counsels knew or should have known that Palmer was

unable to negotiate a plea bargain in his favor, given rise to
the various flawed and circumstantial evidence of the case, as
well at the interpretation of complicated statutory and
sentencing guideline provisions involved. Bluntly put, Palmer is
not an attorney and is not trained in matters concerning the law,
whatsoever.  Counsel should have accompanied Palmer at every
stage of the plea conference to ensure that Palmer clearly
understood the plea offer conditions and assisted in a favorable
outcome in the negotiations.  By failing to attend the plea
conference, counsel failed to advise Palmer of the advantages and
disadvantages of the plea bargaining agreement, in violation of
Frye, and Padilla, supra.

Palmer impugns that had counsel been present at the
plea conference, to provide his professional advice and guidance,
he would not have been left confused and misinterpreted the
resulting conditions of the negotiations, which were expressed at
the December 22, 2014 change of plea hearing.  Whereby, Palmer
was left under the impression that, per negotiations, by pleading
guilty, he would be sentenced to the ten (10) year mandatory
minimum, with the option to still challenge his status as a
career offender, plus any relevant conduct amount of cocaine
attributed to him at sentencing (Tr. at 20-21).  Palmer was also
left believing that, per negotiations, he would actually be
sentenced "below" the ten (10) year mandatory minimum, if, by

chance, the court did not qualify him as a career offender (Tr. at 20). The government, in turn, advised the court that Palmer's interpretation of the plea bargaining negotiations were totally misplaced (Tr. at 20-21).

Counsel conceded that he was not present at the plea conference, because he had to be out of town that day. (Tr. at 21). Counsel informed the government that if Palmer agreed to meet with him at the conference alone, then it would be fine with him. (Tr. at 21). Counsel also attested he was in contact with the government directly before and immediately after the conference took place Tr. at 21).

The fact that counsel contacted the government before and after the conference does not cure the prejudice Palmer suffered for failing to be accompanied by him at the plea conference. The plea bargaining negotiations were, therefore, unknowing and involuntary. Thus, but for counsel's errors in this respect, Palmer would not have pled guilty, but rather proceeded to trial.

2. Failure to Challenge the Cocaine Type and Quantity at Sentencing Despite the Fact that Palmer Reserved the Rights to do so Per Plea Agreement

Despite Palmer's reservations to challenge the validity

19

and veracity of the type and quantity of cocaine at sentencing,
per plea agreement, including his status as a career offender,
counsel failed to adhere to these pre-sentencing conditions.
Although the sentencing court eventually departed downward from
Palmer's alleged career offender guideline range from offense
level 37, range 360-life, at cateory IV, to offense level 28,
range 140-175 months, at category VI and sentenced him to a 144
month term of imprisonment based on the amount of cocaine
involved - the court did so after considering first, that Palmer
conspired to distribute five or more kilograms of cocaine alleged
in the indictment, and the equivalent 1,000 to 3,000 kilogram
amount of marijuana alleged in the PSIR.

Palmer impugns that there is no sufficient indicia of
reliability of probably accuracy that he individually conspired
to distribute five kilograms of cocaine and its marijuana
equivalent of 1,000 to 3,000 kilograms throughout the lifespan of
the purported conspiracy.  The facts of the case, including the
written plea agreement and PSIR supports Palmer's position.  The
recorded documents indicate that Palmer sold co-defendant George
Kraja, Vunnal Blair and Gregory Miller 125 gram quantities of
cocaine every two weeks, but does not indicate "for how many
weeks, by which the cocaine was sold."  The plea agreement and
PSIR also indicates that Palmer sold 106.7 grams between May 22,
2011  and June 7, 2011, to a confidential source working for the

Federal Bureau of Investigation (FBI).  Since the total 125 gram
amount is unambiguous, per every two week period, the rule of
leniency suggests that Palmer sold 125 grams for "only" two-
weeks, resulting in 310 grams plus the 106.7 grams = 416.7 grams
of cocaine.

In addition, there is no sufficient indicia of
reliability of probable accuracy that Palmer met the necessary
threshold "relevant conduct" requirements to have "knowingly" had
the reasonable foreseeability of the 666 grams of cocaine and
1.111 kilograms of cocaine base and its marijuana equivalent
amount alleged in the PSIR and relied on by the sentencing court.
The evidence indicates that Palmer was no more than a mere
employee at his co-defendant, George Kraja's autoshop where the
alleged relevant conduct amount of cocaine was seized and extends
from, wiretap recordings also substantiate that fact.  There is
absolutely no other evidence available which suggests that Palmer
conducted cocaine transactions at the auto-shop or even "knew" of
any other cocaine transaction occurrences.

It is still questionable whether the laboratory
analysis distinguished between cocaine and cocaine base before
the total quantity could be determined.  Counsel could and should
have, but did not, move for a _Fatico_ hearing as in _U.S. v._
_Fatico_, 579 F.2d 707 (2nd Cir. 1978), to determine the accurate

cocaine amount prior to sentencing. Had counsel challenged all
of the various components of the cocaine amount, as was pre-
conditioned in the plea agreement, there is a reasonable
probability that the outcome of the court's cocaine type and
quantity would have been different. Moreover, if the "amount-
count" was much less, Palmer's career offender guideline range
would have yielded only at offense level 32. If the court, in
turn, applied the same nine (9) point level downward departure it
previously did from offense level 37 to 28, Palmer's current
offense level would have been reduced from 32 to 23, 92-115
months imprisonment. In addition, because Palmer did not "admit"
to the relevant conduct 666 grams of cocaine and 1.111 kilograms
of cocaine base amounts, the Rule 11 court accepted his guilty
plea, the sentencing court imposed in violation of U.S. v.
Alleyne, 133 S. Ct. 215 (2013); and U.S. v. Apprendi, 147 L. Ed.
2d 435 (20__). Therefore, Palmer is actually innocent, not only
for the five kilograms or more amount alleged in the indictment
and pled guilty, but also the relevant conduct amount relied on
at sentencing.

Since Palmer's statutory mandatory minimum yields at
120 months or 10 years, the Court should have sentenced him to
the least sentence at the 10-year mandatory minimum. But for
counsel's errors in this respect, Palmer would have proceeded to
trial, rather than plead guilty.

3. Failure to File an Adequate
   And Sufficient Anders Brief

Counsel's Anders brief was inadequate and insufficient
in two aspects: First, it argued against, rather than for,
appellate relief. Second, it shows where counsel failed to
investigate and explore the "entire record" before counsel rushed
to judgment to remove herself for alleged non-frivolous claims.
Although Palmer waived his appellate and collateral attack
rights, per plea agreement, counsel could have, but did not,
challenge the invalid process by which the appellate and
collateral attack waiver provisions were procured as described
above - counsel could have done so under the plain error
provision of Rule 52(b) of Fed. R. Crim. P. See U.S. v.
Torrellas, 455 F.3d 96, 103 (2nd Cir. 2006). "Plain error"
review requires a defendant to demonstrate that: (1) there was
error, (2) the error was plain, (3) the error prejudicially
affected his substantial rights, and (4) the error seriously
affected the fairness, integrity or public reputation of judicial
proceedings. U.S. v. Young, 687 F.3d 56, 59 (2nd Cir. 2012)
(quoting U.S. v. Flaherty, 295 F.3d 182, 195 (2nd Cir. 2002)).
The Rule 11 Court's recurring pattern of failure to comply with
Rule 11 in Palmer's case undermined the faith in the judiciary,
which were nonfrivolous claims counsels could have pursued on
direct appeal.

Had counsel related the recurring rule 11 violations on

23

direct appeal Rule 52(b) there is a reasonable probability that the Appellate Court would not have foreclosed the appeal upon the waiver provisions of the plea agreement. Rather, decided the appeal on the merits of Palmer's underlying claims. Apparently, counsel misunderstood the fundamental rubrics of Rule 52(b). See Flores v. Demskie, 215 F.3d 293 (2nd Cir. 2000) (Counsel was ineffective, because "he fundamentally misunderstood well-established state rules that failure of prosecutor to deliver prior statemetn of witness whom prosecutor intended to call at trial, constituted per se error requiring new trial, 'waiving' violation of disclosure at trial that would have entitled Flores to a new trial.") Deluca v. Lord, 77 F.3d 578, 586-86 (2nd Cir. 1996) (Trial strategy based on misunderstanding of law was not entitled to deference under Strickland). But for counsel's errors under these circumstances, Palmer would not have pled guilty, intested elected to exercise his constitutional rights to be tried by jury.

D. Based on U.S. v. Mathis
   Palmer Should No Longer
   Qualify as a Career Offender


     Pursuant to U.S. v. Mathis, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), categorical and modified categorical approached, Palmer's February 3, 1999 - New York State controlled substance

conviction is not the type of "prior felony conviction" that
entitled the government to a sentencing enhancement, for career
offender purposes under U.S.S.G. § 4B1.1 and therefore should no
longer qualify him as that of such.

The New York State statutes in question, criminal sale
of a controlled substance in the fifth degree, N.Y. Penal Law §§
220.31 and 220.00 are "divisible" in one aspect and "indivisible"
in another, as they are written in the "disjunctive-or" and in
the sense that they address in the "generic" terms, various
aspects of illegal narcotic possessions and/or sales.  The
statutes do not explicitly refer to the added factors of a
defendant's status should be, insofar as related to the specific
narcotic.  Expressed another way, the statutes listed several
alternative means as well as elements of defining multiple
crimes, and it is undetermined which crime Palmer allegedly
committed or was found guilty of by a jury or pled guilty to on
February 3, 1999.

New York Penal Law § 220.21 contains a dealing or
trading of elements.  Id.  Specifically, N.Y. Penal Law § 220.31,
provides that, "a person is guilty of criminal sale of a
controlled substance in the 5th degree when he knowingly and
unlawfully "sells" a controlled substance.  New York defines
"sell" to mean, to sell, exchange, give or dispose of to another,

25

<u>or to offer or agree to do same</u>.  <u>Cf</u>, N.Y. Penal Law § 220.00(1).

Hencefore, the February 3, 1999 conviction in question, should no longer qualify as an enumerated predicate offense for career enhancement purposes under § 4B1.1, because the New York Statutes are broader than the generic "sale" of a controlled substance of all the enumerated crimes, because the statutes are both divisible and indivisible and Palmer is actually innocent of the career offender enhancement as a result thereof, in light of <u>Mathis</u>, supra.

## V.  Conclusion

Palmer prays that this motion is granted.

Submitted by,

*Charles Palmer* Date: 06/22/2017
Charles Palmer, pro se

## VI.  Declaration

l hereby declare under the penalty of perjury that the foregoing statement of facts is true and correct to the best of my knowledge.  28 U.C.S. § 1746.

Dated: <u>June 22, 2017</u>        ;        Signature: *Charles Palmer*

VII. <u>Certificate of Service</u>

I hereby certify that on the 22 day of June, 2017, true copies of the foregoing were mailed to the United States District Court for the Western District of New York.

Respectfully submitted,

*Charles Palmer* Date:06/22/2017
Charles Palmer, pro se

cc: U.S. Attorney's Office
    W. District of New York
    138 Delaware Avenue
    Buffalo, NY 14202

27

Charles Palmer, pro se
Reg. No. 05138-055
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

United States of America
      Respondent,

      -vs-

Charles Palmer, pro se
      Petitioner.        /
_____/

In the United States

District Court for the

Western District of NY

Cr. No. ~~15-2289~~

11-CR-202

Affidavit in Support of Palmer's
Motion for Leave to File
To Vacate, Set Aside, or Correct His Sentence

    I, CHARLES PALMER, swear under the penalty of perjury

that the following is true and correct to the best of my

knowledge:

    While I was being detained for my June 17, 2011 arrest

(federal indictment No. 11-cr-202) at the Niagara County Jail in

Lockport, NY, I received a visit from Assistant United States

Attorney "AUSA" Frank Pimental and "FBI" Special Agent Venessa

Paris. My court appointed attorney Joseph Terranova was not

present; he was out of town. "AUSA" Pimental made a conference

call to my attorney. "AUSA" Pimentel stated that he had received

my Attorney's consent to visit me so we could possibly have a

1

plea agreement worked out before December 22, 2014, our court
date the following week. We had a trial date scheduled for
January 6, 2015 that was to be avoided if possible.

I stated if there a trial next month I will not be
there, and that I did not have confidence in my attorney, Joseph
Terranova. Attorney Terranova is unprepared for trial. He has
not discussed a defense with me. He has stated that he is going
to do all he can to keep me from being sentenced to 30 years to
life. I have asked him to provide me with discovery material and
to file motions. I have mailed the clerk of the court's office
and your office letters, motions and affidavit that I have asked
him to file with the court. (Exhibit #1). If there is going to
be a plea agreement worked out it would have to be so I could
receive 10 years or less.

The following week after "AUSA" Pimental and I
negotiated the plea agreement, I received a visit from my
Attorney, Mr. Terranova. He has a copy of the plea agreement
that "AUSA" Pimental had provided him with. I informed my
attorney what I reasonably understood to be the terms of the plea
agreement. Motions will have to be filed to suppress the
following to overcome the 10 year minimum mandatory sentence.

1.      A forensic chemist will be needed to determine if the

2

substances, "cocaine, cocaine base, and marijuana" were illegal
controlled substances that could be marketable and usable.

      a. Used at the grand jury that indicted me, case #11-
cr-202.

      b. I allegedly sold to confidential source Douglas
Williams or others.  Also need the recordings of all the alleged
controlled buys.

      c. relevant conduct

      d.  presentence report

2.      Who had dominion/control/constructive possession over
the drugs that were found at 2307 Broadway, Cheektowaga, New York
the day of my arrest?  The government did make some controlled
buys from that address from soneone on the indictment.  This is
the relevant conduct that the government wants to use to get me
at 5 kilograms or more of cocaine / 280 grams of cocaine base.
Suppression hearing will be a must.

3.      The government is not going to:

      a. File a 851 notice

b. Make a sentence recommendation for case no. 11-cr-202 or my supervised release violation being a concurrent sentence.

4.      Career Offender: the government is going to use the following convictions to have me a career offender.

a.      2003 Title 21 U.S.C. § 846, 5 grams or more of cocaine base.

b.      Fictitious 1999 New York State criminal sale of a controlled substance in the fifth degree "NYS Penal Law §§ 220.31."

concerning the fictitious 1999 New York State "NYS Penal Law § 220.31" conviction, I was questioned by the FBI in 1999 and 2003 about the corrupt Buffalo Narcotic Detectives that robbed me and gave me the fictitious 1999 drug sale conviction.

I was informed that the 1999 and 2003 meetings were listed in the discovery material that was provided to the corrupt detectives when they were arrested by the FBI. I informed my attorney that it was very necessary that he provide me with the proffered documents from those two meetings. The corrupt

4

detectives were convicted.

Case # 00-cr-53 Darnyl Parker, John Ferby, David
Rodriguez, were indicted in 2000

Case # 03-cr-11 Paul Skinner, Gerald Skinner, Sylvestre
Acosta were indicted in 2003.

## Presentence Report Issues

My attorney was present when I expressed to the United
States Probation Office that I am objecting to him using my 2003
presentence report and him using police records to be used for my
2015 presentence report.  I expressed to him that I was not
taking responsibility for 5 kilograms or more of cocaine or any
cocaine base.  All the convictions that he uses in my PSR that
are not court documents I am going to object to.  All drugs that
I don't have a chemist test I am going to object to them being
used in my PSR.  I have informed Attorney Terranova and the
U.S.P.O. that I did not waive my rights to argue the issues that
are going to be listed in my PSIR.  I have enclosed copies of the
letters I mailed to all attorneys, clerks of court, and U.S.
Probation Office.  (Exhibit # 2).

## Supervised Release Violation

I had informed my trial and appeal attorney that case no. 03-cr-132 was a guilty plea for a 841(1)(b), 5 grams or more of cocaine base.  I was sentenced July 13, 2005 as I had a conviction for a 841(1)(a) 50 grams or more of cocaine base.  My supervised release violation was for a a Class A felony 51-63 months when it was supposed to have been for 33-41 months.  this is one of many prejudiced issues with this case.  "Any [increase in the] amount of actual jail time due to sentencing guideline errors, constitutes prejudice under Strickland."  Glover v. United States, 531 U.S. 198 S. Ct.  (Exhibit # 3).

I hereby declare under the penalty of perjury that the foregoing statement of facts is true and correct to the best of my knowledge.  28 U.S.C. § 1746.

Dated: June 22, 2017 ;          Signature: Charles Palmer

6



U.S. POSTAGE
PAID
08640
JUN 23, 17
AMOUNT
**$0.00**
R2305M146244-07

1006

14202

Charles Palmer
Reg. No. 05138-055
Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

,DC - WDNY

N 26 2017   **TO:**

BUFFALO

lerk of Court
.S. Courthouse
Niagara Square
iffalo, NY 14202

:017
:R

JSPS.COM®
PLIES ONLINE

