UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES PALMER,

                              Petitioner,

        v.                                                    **DECISION AND ORDER**
                                                              17-CV-581S
UNITED STATES OF AMERICA,                                     11-CR-202S (1)

                              Respondent.

## I. INTRODUCTION

Presently before this Court are Petitioner Charles Palmer's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 and motions related thereto.  For the reasons discussed below, Palmer's § 2255 motion is denied, and the related motions are resolved as set forth herein.

## II. BACKGROUND

On December 22, 2014, Palmer appeared before this Court and pleaded guilty to conspiring to distribute, and possess with intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 846.[1]  See Docket Nos. 399, 400.  He did so with the benefit of a plea agreement, in which he agreed that his mandatory minimum sentence by statute was a 10-year term of imprisonment and that his maximum possible sentence by statute was life imprisonment, a fine of $10,000,000, a mandatory special assessment

---

[1] On this same date, Palmer also pleaded guilty to the related petition for violation of supervised release in 03-CR-132S, for which this Court later sentenced him to 51 months' imprisonment, to run concurrent with his sentence in the instant case.  See United States v. Palmer, 03-CR-132S, Docket Nos. 88, 89, 92, 95. After briefing of his § 2255 motion in the present case, Palmer moved to amend/supplement his motion to include arguments attacking his underlying conviction and supervised release sentencing in 03-CR-132S. See Docket No. 581.  That motion will be denied in light of this Court's previous denial of Palmer's untimely § 2255 motion challenging the underlying conviction and sentencing, which he filed directly in 03-CR-132S. See United States v. Palmer, 03-CR-132S, Docket No. 104.

of $100, and supervised release of at least five years and up to life. See Plea Agreement, Docket No. 399, ¶ 1.

Palmer further agreed that his Sentencing Guidelines calculations were dependent on whether the Career Offender guideline in § 4B1.1 (b)(1) of the United States Sentencing Guidelines ("U.S.S.G.") applied. Id. ¶ 7. If, as the government believed, the guideline applied, Palmer agreed that he would have a total offense level of 34 and a criminal history category of VI, which would result in a Guidelines sentencing range of 262-327 months' imprisonment, a fine of $17,500 to $10,000,000, and a 5-year term of supervised release. Id. ¶ 10 (a). If, as Palmer believed, the guideline did not apply, Palmer agreed that he would have a total offense level of 27 and a criminal history category of III, which, given the mandatory minimum sentence, would result in a Guidelines sentencing range of 120 months' imprisonment, a fine of $12,500 to $10,000,000, and a 5-year term of supervised release. Id. ¶ 10 (b). Either way, Palmer waived his right to appeal or collaterally attack any sentence of 240 months' imprisonment or less. Id. ¶ 17.

On April 22, 2015, this Court found that Palmer was a Career Offender under the Guidelines, consistent with the government's position and the probation officer's Presentence Investigation Report, and sentenced him to 144 months' imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs. See Docket Nos. 476, 524. The Clerk of Court entered judgment on April 28, 2015. See Docket No. 480.

Palmer filed the equivalent of a Notice of Appeal on May 5, 2015. See Docket Nos. 481, 489, 491. On January 17, 2017, the United States Court of Appeals for the

Second Circuit granted the government's motion to dismiss Palmer's appeal as barred by the waiver of appellate rights in the plea agreement.  See Docket No. 548.  The court specifically found that Palmer failed to demonstrate that the appeal waiver was unenforceable.  See id.  The court entered its mandate on March 13, 2017.  See id.

Palmer filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on June 26, 2017.  See Docket No. 550.  He thereafter filed a series of related motions[2] and submissions, the last of which he filed on March 11, 2020.  See Docket Nos. 551, 553, 566, 569, 570, 572, 575, 576, 578, 579, 581.  The government responded to Palmer's petition on October 23, 2017.  See Docket No. 565.  This Court took all pending matters under advisement without oral argument.

### III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v.

---

[2] Palmer filed both procedural and substantive motions, some of which remain pending.  Plaintiff's pending motion to amend (Docket No. 570) is granted, and this Court has considered the claims and arguments therein.  Plaintiff's motion to compel the government to further answer his petition (Docket No. 572), motion for an Order to Show Cause (Docket No. 578), and motion to reduce sentence (Docket No. 579) are each denied in light of the disposition herein.

United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  But an exception exists for cases involving intervening changes in the law, in which case the petitioner

"must show that there is new law which, when applied to their claims, would result in a different disposition."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of non-constitutional, non-jurisdictional claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual prejudice or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989) ("non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal").  To satisfy the cause component, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993).  To satisfy the prejudice component, the petitioner must demonstrate prejudice that creates an "actual and substantial disadvantage, infecting . . . error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  To establish actual innocence, the petitioner must show "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley, 523 U.S. at 623 (internal quotation marks and citation omitted).  But this rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of

whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

In addition to these two rules, waiver principles also apply.  It is well established that a knowing, voluntary, and competent waiver made as part of a plea agreement is presumptively and generally enforceable.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001).  "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed."  Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)).  Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement.  See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in

accordance with the practices and principles of law."[3]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."  Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  See, e.g.,

---

[3] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

     _Machibroda_, 368 U.S at 494, 82 S. Ct. 510; <u>United States v.</u>
     <u>Aiello</u>, 814 F.2d 109, 113-14 (2d Cir. 1987).

<u>Gonzalez v. United States</u>, 722 F.3d 118, 130-31 (2d Cir. 2013).

   Ultimately, the petitioner bears the burden of proving entitlement to relief under §

2255 by a preponderance of the evidence.  <u>See</u> <u>Galviz Zapata v. United States</u>, 431 F.3d

395, 399 (2d Cir. 2005) (citing <u>Williams v. United States</u>, 481 F.2d 339, 346 (2d Cir.

1973)); <u>see also</u> <u>Triana v. United States</u>, 205 F.3d 36, 30 (2d Cir. 2000).

**B.**  **Palmer knowingly, voluntarily, and competently waived his rights to appeal and collaterally attack his sentence.**

   A defendant's knowing, voluntary, and competent waiver of his right to appeal and

collaterally attack his sentence is presumptively enforceable.  <u>See</u> <u>Riggi</u>, 649 F. 3d at

147.  Because a valid waiver itself may bar a petitioner's claims, enforceability must be

determined as a threshold matter.

   To determine whether a challenged waiver is enforceable, courts examine the

underlying record and may rely on a defendant's sworn statements during the plea

allocution, <u>see</u> <u>Salerno v. Berbary</u>, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which

statements "carr[y] such a strong presumption of accuracy that a district court does not,

absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-

serving and contradictory testimony," <u>United States v. Juncal</u>, 245 F.3d 166, 171 (2d Cir.

2001).

   Palmer challenges the validity of his waiver on two grounds.  First, he claims that

he did not understand the terms of his plea due to ineffective-assistance-of-counsel

because his attorney left him unrepresented at a plea-negotiation meeting.  <u>See</u> Docket

No. 550, pp. 3, 17-20; Docket No. 570, pp. 7-9.  Second, he maintains that his plea was

unknowing because this Court did not fully comply with the Rule 11 plea allocution requirements.  See Docket No. 550, pp. 11-15.  Neither argument has merit.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To succeed on his ineffective-assistance-of-counsel claim, Palmer must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Palmer must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).  The question is

ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, Palmer must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Rule 11 (b) of the Federal Rules of Criminal Procedure sets forth the requirements of a federal plea allocution. It requires the court to explain a number of matters to a defendant and to ensure that he or she understands them. See Fed. R. Crim. P. 11 (b)(1). Ultimately, the allocution "is designed to assist the district judge in making the

constitutionally required determination that a defendant's guilty plea is truly voluntary." United States v. Maher, 108 F.3d 1513, 1520 (2d Cir. 1997); see also Fed. R. Crim. P. 11 (b)(2) (requiring the court to determine that guilty plea is voluntary and not the product of force, threats, or undisclosed promises). Variance from the requirements of the rule is harmless if it does not affect substantial rights. See Fed. R. Crim. P. 11 (h). Substantial rights are affected when a defendant can show "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004).

Here, Palmer first fails to meet the Strickland standard because both the plea agreement and the plea allocution flatly refute his claim that his attorney was ineffective. This same record also forecloses Palmer's second claim since it demonstrates that the plea allocution did not result in the entry of an unknowing or involuntary plea. This Court therefore finds that Palmer entered his guilty plea knowingly, voluntarily, and competently, without undue pressure or coercion.

First, in his plea agreement, Palmer acknowledged his rights to appeal and collaterally attack his sentence and then knowingly agreed to waive them as follows:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court of 20 years imprisonment or less, a fine of $10,000,000 or less, and any term of supervised release notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.
>
> The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to

challenge the sentence in the event that in the future the
defendant becomes aware of previously unknown facts or a
change in the law which the defendant believes would justify
a decrease in the defendant's sentence.

Plea Agreement, ¶¶ 17, 18.

Palmer further acknowledged that he had read the plea agreement, that he had a
full opportunity to discuss the terms of the plea agreement with his lawyer, that the
agreement represented the total agreement between himself and the government, that
no promises or representations other than those contained in the plea agreement were
made to him, that he understood all of the consequences of his guilty plea, that he fully
agreed with the contents of the plea agreement, and that he was entering the plea
agreement voluntarily and of his own free will.  Id. ¶ 21 and p. 10.

Second, as it relates to Palmer's argument that his attorney was ineffective by
leaving him unrepresented at a plea-negotiation, the plea allocution reinforced that
Palmer suffered no prejudice as a result of that meeting and that it did not affect the
knowing and voluntary nature of his guilty plea.

Palmer volunteered during the allocution that he had met with the prosecutor.  See
Plea Transcript, Docket No. 523, p. 19.  Both the prosecutor and defense counsel then
confirmed that Palmer wanted to meet with the prosecutor despite knowing that defense
counsel was unavailable, that defense counsel communicated with the prosecutor both
before and after the meeting, and that defense counsel visited Palmer within days of the
meeting to review and explain the plea offer.  See id. pp. 20-21.  At no time did Palmer
object to his attorney's absence during this meeting, and there is no indication anywhere
in the record that Palmer's solo participation in the meeting had any effect on the knowing
and voluntary nature of his guilty plea.  Indeed, Palmer participated in the meeting

12

voluntarily and with his attorney's consent, and defense counsel advised Palmer after the meeting and reviewed the parameters of the government's plea offer with him.  Palmer expressed satisfaction with counsel's representation, see id. at 4, and there is no suggestion in the record that Palmer suffered any prejudice from meeting alone with the prosecutor or that having done so had any effect on the knowing and voluntary nature of his guilty plea.

Third, as it relates to Palmer's contention that omissions in the Rule 11 plea allocution rendered his plea unknowing and involuntary, the record again belies his claim. With the exception of two Rule 11 (b) provisions, neither of which pertain to the knowing and voluntary nature of Palmer's plea, this Court informed Palmer of his relevant rights[4] and ensured that he understood them.  This Court placed Palmer under oath (see Plea Transcript, pp. 2-3), addressed him in open court, and determined that he understood the following: (1) his right to plead not guilty (see id. p. 28); (2) his right to a jury trial (see id. pp. 4, 26-27); (3) his trial rights (see id. pp. 8-9, 26-27); (4) his waiver of his trial rights upon entry of a guilty plea (see id. pp. 9, 26-27); (5) the nature of each charge to which he was pleading guilty (see id. pp. 7-8, 9-10, 27); (6) the maximum and minimum possible penalties (see id. pp. 6-7, 12, 14-19, 21-25); (7) the applicability of a special assessment (see id. p. 6), (8) the court's obligation to calculate the applicable sentencing guidelines range and to consider the factors set forth in 18 U.S.C. § 3553 (a) (see id. pp. 10-12, 22), and (9) his waiver of his right to appeal or to collaterally attack his sentence (see id. pp. 3, 8, 13-14).  See Fed. R. Crim. P. 11 (b)(1)(B), (C), (E)-(I), (L)-(N).

The two omitted provisions concerned advising Palmer that the government could

---

[4] The Rule 11 provisions pertaining to forfeiture, restitution, and citizenship were not relevant to the proceedings.  See Fed. R. Crim. P. 11 (b)(1)(J), (K), (O).

use any sworn statements he made in a prosecution for perjury or false statement and that he had the right to be represented by counsel at trial and every other stage of the proceedings.  See Fed. R. Crim. P. 11 (b)(1)(A), (D).  Neither of these provisions go to the knowing or voluntary nature of Palmer's plea.  The record reflects that Palmer was intimately familiar with his right to counsel and never expressed dissatisfaction with counsel or a desire to represent himself.  See Plea Transcript, p. 2 (confirming that Palmer and counsel "spent some quality time together"), p. 4 (confirming satisfaction with counsel); pp. 8-9 (explaining counsel's role at trial); p. 26 (confirming that Palmer signed the plea agreement on the advice of counsel).  Likewise, other than Palmer's present self-serving claims, nothing in the record suggests that the lack of explanation that the government could use Palmer's sworn statements against him in a future prosecution in any way prejudiced him or affected the knowing and voluntary nature of his guilty plea. In other words, Palmer has failed to demonstrate that but for these two omissions, he would not have pleaded guilty.

Consequently, having thoroughly reviewed the record, this Court finds that Palmer entered his guilty plea and the waiver provisions knowingly, voluntarily, and competently.

**C.   Palmer's remaining claims fail.**

Construing Palmer's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that he brings the following additional claims.  First, he alleges that his appellate counsel was ineffective by (1) failing to investigate his case, and (2) failing to challenge several issues, including the validity of his appeal waiver.  See Docket No. 550, pp. 7, 24-25; Docket No. 553, p. 4.   Second, he claims that trial counsel was ineffective by failing

to challenge his Career Offender status and the type and quantity of cocaine used as relevant conduct at sentencing.  See Docket No. 550, pp. 20-23; Docket No. 553, p. 4; Docket No. 570, pp. 10-11.  Third, he claims that this Court miscalculated his sentencing guidelines range and that he no longer qualifies as a Career Offender under United States v. Mathis, __ U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016).  See Docket No. 550, pp. 25-27; Docket No. 553, p. 4; Docket No. 570, pp. 2-4.  Fourth, he claims that he implicitly entered a conditional plea under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).  See Docket No. 570, pp. 5-6.  And finally, Palmer claims that he is actually innocent.  See Docket No. 550, pp. 8, 22-23.

Having found that Palmer knowingly, voluntarily, and competently waived his appeal and collateral-attack rights, this Court must enforce the waiver.  Cf. United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").  While there are narrow exceptions to the general enforceability of waivers, none of them apply here.  A waiver provision is presumptively enforceable other than

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).  Since none of these exceptions apply, this Court must enforce the waiver

provision of the plea agreement.

A valid "waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz, 360 F. Supp. 2d at 577.  A valid guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").  And the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." Garcia-Santos, 273 F.3d at 509 (citing United States v. Yemitan, 70 F.3d 746, 747-48 (2d Cir. 1995)); see also United States v. Harrison, 699 F.3d 158, 159 (2d Cir. 2012) (per curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver") (quoting Riggi, 649 F.3d at 150 n. 7 )); Medina v. United States, 16 Civ. 5043 (AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017) (citing Garcia-Santos in rejecting a petitioner's argument that his waiver was not knowing and voluntary "because he could not have known 'that he was also waiving a right that didn't exist at the time of the guilty plea'").  The same is true for enforcement of waivers of collateral attack under § 2255.  See Garcia-Santos, 273 F.3d at 509 ("The reasons for enforcing waivers of direct appeal [when the grounds for appeal arose after the plea agreement was entered into] lead us to the same conclusion as to waivers of collateral

attack under § 2255.").

As it relates first to Palmer's remaining ineffective-assistance-of-counsel claims, they are not the type that fall outside of the waiver.  "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement.  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).  A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel.  See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004); see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)).  Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel" that informed his or her decision to enter the guilty plea.  Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added).

This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver.  Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to

agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim.").   In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not.  See id. at *5.

Palmer's remaining ineffective-assistance-of-counsel claims do not relate to the plea process.  Again, Palmer claims that his appellate counsel failed to investigate his case and challenge several issues on appeal, and that trial counsel failed to challenge his Career Offender status and the type and quantity of cocaine used as relevant conduct at sentencing.  Because these claims do not relate to the plea process, they do not survive the valid, enforceable waiver.  See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing.   We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")); Mitchell v. United States, Case Nos. 14-CV-6350-FPG, 11-CR-6019-FPG, 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors that did not pertain to the plea process); United States v. Hill, Nos. 13 Civ. 1107 (LAP), 11 Cr. 145 (LAP), 2014 WL 104565, at *7 (S.D.N.Y. Jan. 7, 2014) (holding that valid waiver bars failure-to-investigate and other pre-plea claims); United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may

18

"[c]laims of ineffective assistance of counsel . . . survive § 2255 waivers").

As it relates to Palmer's claims that this Court miscalculated his sentencing guidelines range and that he no longer qualifies as a Career Offender under subsequent caselaw, this Court finds that they are barred by both the collateral-attack waiver and the mandate rule because Palmer unsuccessfully raised them on appeal. See Docket No. 565, p. 5; see also See United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005) (holding that a defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."). Consequently, these claims fail.

As it relates to Palmer's claim that he implicitly entered a conditional plea, it is both barred by the collateral-attack waiver and factually incorrect. Palmer did not enter an Alford plea; he entered an unconditional guilty plea, with reservation of some arguments for sentencing. See Docket Nos. 399, 523. This claim therefore fails.

Finally, Palmer's naked claim of actual innocence fails. Palmer's claims of actual innocence are premised on his ineffective-assistance-of-trial-counsel claims, which are foreclosed by the waiver provision of his plea agreement. He essentially appears to argue that he would have been actually innocent if his trial lawyer had successfully challenged the government's proof. This is wholly deficient; a claim of actual innocence requires a much stronger showing. To establish actual innocence, Palmer must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a

reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 130 L. Ed. 2d

808 (1995).  Palmer's bare claim does not approach this standard.  See United States v.

Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (finding that a claim of actual innocence "must

be supported by evidence").

      Consequently, for the reasons stated above, this Court finds that Palmer's claims

fail.

### D.    Evidentiary Hearing

      As indicated above, § 2255 provides that a court must hold an evidentiary hearing

"[u]nless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from

the motion, any attached exhibits, and the record of prior proceedings that the moving

party is not entitled to relief, the judge must dismiss the motion . . . ."

      Here, this Court finds that no evidentiary hearing is warranted or required because

Palmer's motion and the record conclusively demonstrate that Palmer is not entitled to

relief under § 2255.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815,

at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing

record is conclusive that petitioner is not entitled to relief on any theory presented to [the

court]").

### E.    Certificate of Appealability

      For a certificate of appealability to issue, a petitioner must make a "substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the

required "substantial showing," Palmer must establish that "reasonable jurists could

debate whether . . . the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to proceed further."
Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal
quotation marks omitted).  Palmer has made no such substantial showing of the denial of
a constitutional right in this case.  A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Palmer's Motion to Vacate, Set Aside or Correct his
Sentence is denied.  If Palmer wishes to appeal, he must file a Notice of Appeal with the
Clerk's Office, United States District Court, Western District of New York, within 60 days
of the date of judgment in this action.  Requests to proceed on appeal as a poor person,
if any, must be filed with the United States Court of Appeals for the Second Circuit, in
accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct
his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 550) is DENIED.

FURTHER, that Petitioner's Motion to Amend (Docket No. 570) is GRANTED.

FURTHER, that Petitioner's Motion to Amend/Supplement (Docket No. 581) is
DENIED.

FURTHER, that Petitioner's Motion to Compel (Docket No. 572) is DENIED.

FURTHER, that Petitioner's Motion for an Order to Show Cause (Docket No. 578)
is DENIED.

FURTHER, that Petitioner's Motion to Reduce Sentence (Docket No. 579) is
DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3)

and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 17-CV-581S.

FURTHER, that the Clerk of Court is directed to mail a copy of this decision to Petitioner at his current address of record.

SO ORDERED.


Dated:        June 10, 2021
              Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                      United States District Judge